**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JESSICA L. SMITH,

     *Plaintiff*,

*v.*                     CASE NO. 13-CV-11268

COMMISSIONER OF         DISTRICT JUDGE GERALD E. ROSEN
SOCIAL SECURITY,        MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 12.)

Plaintiff Jessica L. Smith was 31 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 33-34.) Plaintiff's employment history includes work as a waitress for four years. (Tr. at 33-34.) Plaintiff filed the instant claims on September 13, 2010, alleging that she became unable to work on June 15, 2005. (Tr. at 165-70.) The claims were denied at the initial administrative stages. (Tr. at 121, 122.) In denying Plaintiff's claims, the Commissioner considered disorders of back (discogenic and degenerative) and affective disorders as possible bases for disability. (*Id.*) On September 22, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Tammy A. Thames, who considered the application for benefits *de novo*. (Tr. at 9-26, 29-92.) In a decision dated October 28, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 22.) Plaintiff requested a review of this decision on December 30, 2011. (Tr. at 8.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on January 25, 2013, when after review of additional exhibits[2] (Tr. at 235-38, 661-72), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On March 22, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the

ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

4

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

## C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. § 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. § 1381, *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

5

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.    ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through June 30, 2010, and that Plaintiff had not engaged in substantial gainful activity since June 15, 2005, the alleged onset date. (Tr. at 14.) At step two, the ALJ found that Plaintiff's chronic myofascial pain syndrome, degenerative disc disease, degenerative joint disease, lower extremity neuropathy, diabetes mellitus, anxiety, depression, and obesity were "severe" within the meaning of the second sequential step. (Tr. at 15.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 15-16.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. at 21.) The ALJ also found that as of the alleged disability onset date, Plaintiff was 25 years old, which put her in the "younger individual age 18 to 44" category. *See* 20 CFR Part 404, Subpart P, App. 2. At step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 17-21.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 21-22.)

### E.    Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was involved in a motor vehicle accident in 1994 wherein she broke her right leg, left elbow, and right arm; tragically, Plaintiff's mother and two siblings were killed. (Tr. at 523.)

Plaintiff was treated for depression with prescription medication at Central Michigan Community Mental Health from 2002 through 2010. (Tr. at 574-660.) On February 8, 2010, it was noted that Plaintiff's presentation, speech, affect, impulse control, and thought process were all within normal limits. (Tr. at 649-50.)

Plaintiff sought treatment with Marvin Bleiberg, M.D., at Michigan Spine and Pain in July, August, and September of 2010. (Tr. at 239-71, 512-69.) Dr. Bleiberg consistently noted that

Plaintiff was oriented times three, that her mood was pleasant and that her speech was fluent and coherent. (Tr. at 240, 251.) Plaintiff reported 4/10 average and 8/10 maximum pain. (Tr. at 250.)

On July 20, 2010, Plaintiff reported and Dr. Bleiberg confirmed that Plaintiff was able to sit for 2 hours, stand for 2 hours, "walk independently without assistance or equipment" for 30 minutes, lift 25 to 50 pounds, push or pull 25 to 50 pounds, bathe herself, care for her family, clean her house, cook, dress herself, drive, feed herself, do laundry, lie on her back, lie on her stomach, engage in sexual activity, transfer herself, vacuum, work, and bend/twist with pain. (Tr. at 250, 523, 550.)

On July 27, 2010, an MRI of Plaintiff's lumbar spine revealed "[s]table relatively mild degenerative changes with bulging disks at L4-L5 and L5-S1 disk levels." (Tr. at 266.)

On July 28, 2010, Dr. Bleiberg performed an EMG which showed "no electrodiagnostic evidence for a Lumbar Radiculopathy"; the doctor determined that the "studies [were] consistent with a left Peroneal sensory neuropathy." (Tr. at 257.)

On August 2, 2010, x-rays of Plaintiff's lumbar spine were "[e]ssentially normal" (Tr. at 246, 519) and x-rays of Plaintiff's pelvis showed "[m]ild degenerative changes of the pubic symphysis" and "[m]ild spurring of the left S1 joint; slight spurring on the right." (Tr. at 247, 520.) On that same date, x-rays of Plaintiff's knees showed "[m]ild early DJD of the medial compartment of both knees" and "[m]ild early DJD of the patello-femoral joint of both knees." (Tr. at 248, 521.) X-rays of Plaintiff's ankles were "[n]ormal." (Tr. at 249, 522.)

On September 27, 2010, Dr. Bleiberg recommended that Plaintiff participate in physical therapy. (Tr. at 514.)

Plaintiff was also treated at Mid-Michigan Internal Medicine and Mid-Michigan Physicians Group, Neurology, from October 2005 through September 2010. (Tr. at 272-395, 402-59.) It was

8

consistently noted that Plaintiff's depression was stable with medication, that she was oriented times three and appropriately groomed, that her thought process, thought content, affect, memory, and judgment were normal or fair to good, and that her concentration was between normal and limited. (Tr. at 275, 278, 280, 282, 317, 339, 343, 345, 347, 351, 353, 355, 357, 359, 361, 363, 365, 367, 369, 371, 373, 375, 377, 379-80, 383, 513.)

Plaintiff also sought treatment in the emergency room of Mid-Michigan Medical Center in Midland, Michigan, from 2003 to 2011. (Tr. at 460-511.) Plaintiff was also treated at the Diabetes Center from September to December of 2010. (Tr. at 396-401.)

On October 20, 2010, Ron Marshall, Ph.D., completed a Disability Determination Explanation form as to mental impairments. Dr. Marshall opined that Plaintiff was moderately limited in the ability to carry out detailed instructions and maintain attention and concentration for extended periods. (Tr. at 117.) However, Dr. Marshall also opined that Plaintiff was not significantly limited in her ability to understand and remember very short and simple instructions and that she was not significantly limited in her ability to carry out very short and simple instructions; the doctor therefore concluded that Plaintiff "retains ability to do rote tasks" and that she "[m]ay work better with brief interactions with others." (Tr. at 117-18.)

On October 28, 2010, Dale Blum, M.D., completed a Disability Determination Explanation form regarding physical impairments. (Tr. at 93-116). Dr. Blum concluded that Plaintiff could occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, stand or walk for 2 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and that pushing or pulling should be limited to occasional use. (Tr. at 100.) As to postural limitations, Dr. Blum concluded that Plaintiff should only occasionally climb ramps/stairs, balance, stoop, kneel, and crouch and that she should never climb ladders/ropes scaffolds. (Tr. at 101.) As to manipulative

limitations, Dr. Blum concluded that Plaintiff should only occasionally reach overhead but was unlimited in her ability to do handling, fingering and feeling. (*Id.*) There were no visual or communicative limitations established. However, as to environmental limitations, Dr. Blum opined that Plaintiff should avoid concentrated exposure to extreme cold, wetness, and vibration and should avoid all exposure to hazards. (Tr. at 101-02.) Dr. Blum noted that the medical evidence of record revealed only "mild" arthritis in the knees and only "mild" degenerative disc disease and concluded that Plaintiff could perform sedentary work on a sustained basis. (Tr. at 102, 105.)

Plaintiff was evaluated at the University of Michigan Hospital on March 8, 2011, by Ann A. Little, M.D. (Tr. at 570-73.) Dr. Little diagnosed "bilateral symmetric length dependent small-fiber neuropathy" and stated that "it is likely that the patient's small-fiber neuropathy is a result of her diabetes." (Tr. at 572.) Dr. Little "counseled [Plaintiff] at length regarding diabetes management" and "encouraged [her] to start an aerobic exercise program that includes at least 150 minutes of aerobic exercise per week[.]" (Tr. at 572-73.)

Plaintiff indicated in her Daily Activity Report that she takes care of her boyfriend and "cook[s], [does] housework, [and] drive[s]" for him. (Tr. at 208.) Plaintiff also stated that she cares for her dogs and "play[s]" with them. (*Id.*) Plaintiff stated that she has no problems with personal care, that she cooks all the meals for an hour or so at a time, she does "laundry, clean[s], sweep[s], vacuum[s], dust[s], [and] rake[s]" for a "couple of hours daily[.]" (Tr. at 208-09.) Plaintiff also indicated that she goes outside "everyday[,]" is able to drive, shop in stores for "3 hours" at a time, is able to handle her personal finances, enjoys "fishing, gardening, watching t.v. or movies, texting[,]" and likes to "talk, text, go out, write letters, play cards, cook" and attend church. (Tr. at 210-11.) Plaintiff indicated that she can pay attention for "2 hours" and is "good" at following written and spoken instructions. (Tr. at 212.)

At the administrative hearing, Plaintiff testified that she is a chore provider who is paid by the State of Michigan to take care of her fiancé who "shot himself a year ago and instead of paying a nurse, I take care of him for eight hours a week." (Tr. at 34.) Plaintiff indicated that as part of her duties, she shaves and bathes him, makes sure he takes his medications, and drives him to his medical appointments in Ann Arbor, Michigan. (Tr. at 35.) Plaintiff indicated that she was in a car accident in 1994 and that she has "always had back pain since '94." (Tr. at 39.)

Plaintiff testified that she experiences neuropathy in her feet and was "starting to feel it in my hands. I don't know if it's the arthritis or if it's the neuropathy but I'm starting to feel it." (Tr. at 42-43.) Plaintiff testified that she can stand for "I'd say 15 minutes" at a time and that after that, she "would sit" or, if she was standing in line for a cash register, she would "lean on the cart." (Tr. at 46-47.) Plaintiff estimated that she could walk "less than a quarter mile" or for 20 minutes at a time. (Tr. at 48.) Plaintiff stated that she "can't lift more than like 25 pounds." (Tr. at 48-49.) Plaintiff testified that she "every couple of days" she lies down for "[a]n hour to three hours" and that doing so gives her some relief from her discomfort. (Tr. at 50.) Plaintiff testified that when she is not taking care of her fiancé she goes outside and watches her dogs, sits in her hammock, "then I like to go to my garden, just go there and pick fruit and vegetables and stuff." (Tr. at 51.) Plaintiff stated that she does not watch a lot of television because she prefers to "just sit there and just text or talk on the phone or do like my paperwork . . . then I would maybe do the dishes, start the dishes. I do the dishes in intervals. I'll get up, I'll do some of them for like 15 minutes. I'll sit back down, I'll get back up, do some more depending on how many there is." (Tr. at 52-53.)

Plaintiff stated that her mood swings affected her when she was working because she had outbursts where she "could only take so much and then sometimes I would just tell them how it was, how I felt like they were being mean to me. And then I would get wrote up or however they

wanted to handle it." (Tr. at 55.) However, Plaintiff also stated that she was never fired because of this behavior; instead, after she walked off, her boss asked her to come back to work. (Tr. at 55-56.) Plaintiff stated that she was taking Paxil for depression and anxiety while she was working and that she "do[es]n't really notice anything different but they say to keep taking it . . . ." (Tr. at 57.) Plaintiff indicated that she has "had the depression since the car accident" in 1994. (Tr. at 76.) Plaintiff indicated that her fiancé "shot himself in front of me and so it was quite dramatical [sic]" but that when Community Mental Health evaluated her, it was determined that she did not need any services. (Tr. at 57-58.)

When asked what she and her fiancé do for fun, Plaintiff responded, "A lot of outside stuff, croquet in the yard or I go sit in the shed with him as he does projects, or swing, bike ride. Sometimes I like to go for a bike ride. Garden, flowerbeds, stuff like that. I have a big yard so that's where you'll find me." (Tr. at 60.) When asked by her attorney whether she takes breaks when doing garden work, Plaintiff indicated that she does and that these breaks last for "[t]wenty minutes." (Tr. at 66.) When asked by her attorney, Plaintiff reported "[d]aily" outbursts where she is "just kind of ranting and raving" and that these outbursts last "[a]ll day." (Tr. at 67.) Plaintiff reported that her pain level on a good day with medicine is "[s]even" and on a bad day without medicine it is "absolutely a 10, that's why I'm on it." (*Id.*) When asked how often she "get[s] the bad days," she responded, "every night," and when asked how many days per week she experiences back pain, she responded, "[d]aily." (Tr. at 68.) She stated that using steps or stairs triggers her pain and that she "ha[s] to do them slowly" and can't "conquer a flight of steps." (Tr. at 68-69.) Plaintiff stated that she has a migraine headache once a week that lasts all day and that she gets panic attacks "[o]nce to three times a month." (Tr. at 73-74.) Plaintiff stated that she believes that if she had a job, she'd be absent "[t]wice a week." (Tr. at 82.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

> [could] [o]ccasionally lift and or carry 10 pounds, frequently lift and or carry less than 10 pounds. Stand and or walk two hours in an eight hour workday, sit for a total of about six hours in an eight hour workday. Pushing and pulling with the bilateral upper extremities and the bilateral lower extremities limited to an occasional basis.
>
> Occasionally climb ramps or stairs, never climb ladders, ropes or scaffolds. Frequent balancing, occasional stooping, kneeling, crouching or crawling. Reaching overhead with the bilateral upper extremities limited to an occasional basis. Avoid concentrated exposure to extreme cold, wetness and vibration.
>
> Avoid all exposure to hazards. Having the ability to understand, remember and carry out very short and simple instructions and perform simple tasks. And no more than occasional interaction with the public or co-workers.

(Tr. at 87-88.) The VE responded that such a person could not perform Plaintiff's past work but could perform the 1,800 production inspection jobs, 3,000 general office clerk jobs, and 2,700 bench assembler jobs available in the lower peninsula of Michigan. (Tr. at 88-89.) When asked by the ALJ, the VE responded that his testimony was consistent with the Dictionary of Occupational Titles. (Tr. at 89.)

**F.      Analysis and Conclusions**

**1.      Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of sedentary work. (Tr. at 17-21.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary

13

criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251, at *5.

After review of the record, I suggest that the ALJ utilized the proper legal standard in her application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 11.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that: (1) the ALJ's "failure to give controlling or substantial weight to the opinion of Plaintiff's treating physician, Dr. Bleiberg, is not supported by substantial evidence of record" (Doc. 11 at 7-9); (2) the ALJ "failed to comply with 20 CFR 404.1529 in her finding that Plaintiff's attempts to work discredited her testimony regarding the intensity of her symptoms" (*id.* at 9-25), including that "Plaintiff's work record is not substantial evidence to discredit the severity of Plaintiff's symptoms (*id.* at 9-12), that the "medical record supports the severity of Plaintiff's back, hip, and leg pain" (*id.* at 12-20), and that the ALJ "failed to properly

14

analyze Plaintiff's pain under 20 CFR 404.1529" (*id.* at 21-25); (3) the ALJ "failed to incorporate the finding of consultative evaluator Dr. Blum that Plaintiff could only occasionally balance into Plaintiff's residual functional capacity, even though the ALJ decision gave 'significant weight' to the opinions of Dr. Blum" (*id.* at 25-27); (4) the ALJ "erred in failing to incorporate the findings of consultative evaluator Dr. Marshall into Plaintiff's residual functional capacity (*id.* at 27-29); and (5) the "mental limitations in the residual functional capacity adopted by the ALJ decision are not supported by substantial evidence of record." (*Id.* at 29-34.)

### a. Medical Sources

Plaintiff contends that substantial evidence fails to support the ALJ's failure to give controlling or substantial weight to Plaintiff's treating physician, failure to give proper weight to the consultative examiner's specific finding that Plaintiff could only occasionally balance (although the ALJ gave significant weight to his opinion in general), and failure to incorporate the consultative evaluator's findings into the RFC findings. (*Id.* at 7-9, 25-29.)

### i. Standards

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings,

the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3).  "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

Since the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source of an opinion, [including treating sources,] on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. 20 C.F.R. § 404.1527(d)(3). A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless exercise." *Id.*

"[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight . . . [but] 'is just one more piece of evidence for the administrative law judge to weigh . . . .'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)). Once the treating source is placed on the same level as other medical opinions, the treating source opinion should not be subjected to "greater scrutiny" than the non-treating sources, especially when there are more flagrant inconsistencies in the opinions of the non-treating sources. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379-80 (6th Cir. 2013).

16

If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the treating source opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. These factors may be applied to all medical opinions, not just treating sources. SSR 06-3p, 2006 WL 2329939, at *3 (2006). However, because of the special status of treating source opinions, where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error." *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)). But this error is not always dispositive and can be considered "harmless error" if: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation." *Cole*, 661 F.3d at 940 (quoting *Wilson*, 378 F.3d at 547).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Acceptable medical sources" who can be considered treating sources include "licensed or certified psychologists." SSR 06-03p, 2006 WL 2329939, at *1-2 (2006). After treating sources, a "nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439

(6th Cir. 2012) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). "'The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 F. App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

### ii.    Analysis

It should be noted that Drs. Marshall and Blum are not treating sources but rather non-examining sources; therefore, the ALJ was under no obligation to explain the weight given their opinions. *Smith, supra*. Regardless, the ALJ's hypothetical did not conflict with either of their opinions. As to mental impairments, Dr. Marshall opined that Plaintiff was not significantly limited in her ability to understand and remember very short and simple instructions or her ability to carry out very short and simple instructions and therefore concluded that she "retains ability to do rote

tasks" and that she "[m]ay work better with brief interactions with others." (Tr. at 117-18.) The ALJ's hypothetical limited jobs to those which only required her to "understand, remember, and carry out very short and simple instructions and perform simple tasks." (Tr. at 88.) As to physical impairments, Dr. Blum's assessments were entirely adopted in to the ALJ's hypothetical with the one exception that, under postural limitations, the ALJ placed balancing under the frequent category rather than the occasional category. (Doc. 11 at 25-27; Tr. at 87-88.) I suggest that the ALJ's small change is not inconsistent with the regulatory definition of sedentary work and, therefore, did not affect the VE's testimony. 20 C.F.R. §§ 404.1567(a), 416.967(a).

As to Dr. Bleiberg, a treating physician, this case presents the unusual situation where the ALJ's choice to give Dr. Bleiberg's opinion "little weight" actually resulted in a more restrictive RFC. The ALJ "restricted the claimant to a sedentary exertional capacity" despite the fact that Dr. Bleiberg "indicate[d] among other things that the claimant can sit and stand for a duration of 2 hours at a time, walk for a duration of 30 minutes at a time, and she is able to lift, push, and/or pull between 25 and 50 pounds[.]" (Tr. at 20, 250, 523, 550.) I suggest that Plaintiff's argument is not only counter-productive but also lacks merit. Instead, I suggest that the ALJ's decision is supported by substantial evidence.

### b.   Credibility Findings

Plaintiff contends that the ALJ "failed to comply with 20 C.F.R. § 404.1529 in her finding that Plaintiff's attempts to work discredited her testimony regarding the intensity of her symptoms" (Doc. 11 at 9-25), including that "Plaintiff's work record is not substantial evidence to discredit the severity of Plaintiff's symptoms" (*id*. at 9-12), that the "medical record supports the severity of

Plaintiff's back, hip, and leg pain" (*id.* at 12-20), and that the ALJ "failed to properly analyze Plaintiff's pain under 20 C.F.R. § 404.1529." (*Id.* at 21-25.)

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y*

*of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)    Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

21

In the instant case, the ALJ thoroughly considered each of the above factors. (Tr. at 17-20.) I suggest that the ALJ's finding – that Plaintiff's subjective complaints do not warrant any additional limitations beyond those established in the residual functional capacity – is supported by substantial evidence. (Tr. at 19-20.) I first suggest that substantial evidence supports the ALJ's findings without any reference to whether Plaintiff worked or not; therefore, I suggest that any error on the part of the ALJ in considering whether she worked after the alleged onset date is harmless.

As to mental impairments, the evidence shows that despite Plaintiff's depression, while treated at community mental health her presentation, speech, affect, impulse control, and thought process were all within normal limits. (Tr. at 649-50.) Dr. Bleiberg consistently noted that Plaintiff was oriented times three, that her mood was pleasant and that her speech was fluent and coherent. (Tr. at 240, 251.) At Mid-Michigan, it was consistently noted that Plaintiff's depression was stable with medication, that she was oriented times three, appropriately groomed, and that her thought process, thought content, affect, memory, and judgment were normal or fair to good and that her concentration was between normal and limited. (Tr. at 275, 278, 280, 282, 317, 339, 343, 345, 347, 351, 353, 355, 357, 359, 361, 363, 365, 367, 369, 371, 373, 375, 377, 379, 380, 383, 513.)

As to physical impairments, Plaintiff reported that she was able to sit for 2 hours, stand for 2 hours, "walk independently without assistance or equipment" for 30 minutes, lift 25 to 50 pounds, push or pull 25 to 50 pounds, bathe herself, care for her family, clean her house, cook, dress herself, drive, feed herself, do laundry, lie on her back, lie on her stomach, engage in sexual activity, transfer herself, vacuum, work, and bend/twist with pain. (Tr. at 250, 523, 550.) The objective medical evidence also supports a finding of non-disability. Tests showed only mild degenerative changes, no radiculopathy, and some sensory neuropathy. (Tr. at 246, 248-49, 257, 266, 519-22.) Even the neuropathy was considered a likely "result of her diabetes" that Plaintiff was encouraged

to better manage through aerobic exercise. (Tr. at 572-73.) All treating and non-treating source opinions concluded that Plaintiff is able to perform at least simple, sedentary work. (Tr. at 93-118, 250, 523, 550.) Finally, Plaintiff was treated with prescription medication only and such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

I therefore suggest that the ALJ's finding that Plaintiff was not fully credible is supported by substantial evidence and should not be disturbed.

### c.   RFC Findings

Plaintiff argues that the "mental limitations in the residual functional capacity adopted by the ALJ decision are not supported by substantial evidence of record." (Doc. 11 at 29-34.) However, for the reasons stated above, I suggest that substantial evidence supports the ALJ's findings. In addition, I further suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessments and was in harmony with the objective record medical evidence and Plaintiff's own statements that, despite the pain, she takes care of her boyfriend, cooks for an hour at a time, does housework, drives, plays with and cares for her dogs, has no problem with personal care, does laundry, cleans for a few hours daily, goes outside everyday, shops in stores for three hours at a time, handles her personal finances, attends church, is "good" at following written and spoken instructions, enjoys "fishing, gardening, watching t.v. or movies, and texting[,]" and likes to "talk, text, go out, write letters, play cards, [and] cook." (Tr. at 208-12.) In addition, Plaintiff testified that she does a "lot of outside stuff" such as "croquet in the yard," swinging, bike riding, and gardening. (Tr. at 60.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x

425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER
Dated: January 24, 2014                    United States Magistrate Judge


## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: January 24, 2014          By    s/Patricia T. Morris
                                      Law Clerk to Magistrate Judge Binder